IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

In re:

**MARVIN EARL WHITSETT** | Case # 15-50297-FJS

**Debtor.** | Chapter 13

## RESPONSE TO ORDER TO SHOW CAUSE
## AGAINST JONATHAN L. STONE, ESQUIRE

Jonathan L. Stone ("Mr. Stone"), by counsel, files this Response to the Order to Show Cause. In support of his Response, Mr. Stone respectfully states as follows:

### Preliminary Statement

1. Mr. Stone honors, appreciates, and respects the Bankruptcy Court's necessity and power to enter a Show Cause Order. However, the facts of this matter do not justify the Order to Show Cause ("Show Cause") entered by this Court. The Supreme Court of the United States has held that in order for a court to properly "exercise its inherent authority to award sanctions," the sanctioning Court must find that the party to be sanctioned "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *In re Bost*, 341 B.R. 666, 689 (Bankr. E.D. Ark. 2006), citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S.Ct. 2123 (1991). More importantly, the Supreme Court of the United States added that the sanctioning court must "exercise caution in invoking its inherent power, and it must comply with the mandates of due process[.]" *Chambers,* 501 U.S. at 50, 111 S.Ct. at 2136. The facts and circumstances of this matter are such that there are no set of circumstances by which any reasonable fact-finder could find that Mr.

Jeffrey L. Marks, Esq. (VSB No. 40202)
Kaufman & Canoles, P.C.
2101 Parks Avenue, Suite 700
Virginia Beach, VA  23451
(757) 491-4045 – Telephone (888) 360-9092 – Facsimile
jlmarks@kaufcan.com
*Counsel for Jonathan L. Stone*

Stone "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Accordingly, the Show Cause must be dismissed or otherwise withdrawn.

**Background Facts and Procedural Posture**

2. On March 11, 2015, Peter F. Zooberg ("Mr. Zooberg") of the Law Office of Philip R. Boardman, P.C. initiated this underlying bankruptcy case #15-50297-SCS ("Bankruptcy Case") for Marvin Earl Whitsett ("Debtor") by filing a Chapter 13 voluntary petition ("Petition"). *See* Bankruptcy Case Docket Entry # 1.[1]

3. Mr. Zooberg signed pages 2, 3, and 39 of the Petition on behalf of the Debtor.

4. No other attorney or counsel of record signed the Petition on behalf of the Debtor.

5. On March 11, 2015, Mr. Zooberg filed a Chapter 13 Plan and Related Motions ("Plan") on behalf of the Debtor. *See* Bankruptcy Case Docket Entry #2.

6. Mr. Zooberg signed pages 5 and 6 of the Plan on behalf of the Debtor.

7. On March 12, 2015, the Bankruptcy Court issued a Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines ("Bankruptcy Notice"). *See* Bankruptcy Case Docket Entry #5.

8. The Bankruptcy Notice issued by the Bankruptcy Court states that the attorney for the Debtor is Mr. Zooberg.

9. According to the Show Cause prepared and filed by the Bankruptcy Court, "Mr. Zooberg's privilege to practice before this Court was suspended effective April 1, 2015, through May 30, 2015, pursuant to an order entered by this Court on March 18, 2015." *See* Bankruptcy Case Docket Entry # 31.

---

[1] With respect to references to pleadings filed in the Bankruptcy Case, Mr. Stone respectfully requests that the Court take judicial notice of such pleadings pursuant to Rule 201 of the Federal Rules of Evidence.

2

10. According to the Bankruptcy Court's docket, the March 18, 2015 Order referred to in the Show Cause was not entered in the Bankruptcy Case nor was a copy transmitted to Mr. Stone.  A copy of the Bankruptcy Case docket as of the date of the filing of this Response is attached hereto as **Exhibit 1**.  Mr. Stone believes that there has been no change to the attorney information on the Bankruptcy Court's docket since the Petition was filed.

11. On April 24, 2015, Mr. Stone filed an Objection to Confirmation of Chapter 13 Plan ("Objection") in which Mr. Stone, on behalf of his client, Sterling Church Street Furniture Store, Inc. t/a Grand Furniture Discount Stores, objected to the Plan on the grounds that his client is a secured creditor that was not included in the Plan.  *See* Bankruptcy Case Docket Entry #10.

12. On April 27, 2015, Audrey A. Wineman ("Ms. Wineman") transmitted an electronic mail to Mr. Stone regarding the Objection and stating that "[w]e agree to sustain."  A copy of the April 27, 2015 electronic mail is attached hereto as **Exhibit 2**.

13. Other than Ms. Wineman and Mr. Stone, no other individual was a party to the April 27, 2015 electronic mail.

14. There was no mention in the April 27, 2015 electronic mail that "Mr. Zooberg's privilege to practice before this Court was suspended April 1, 2015" or that Mr. Zooberg was not otherwise authorized to represent the Debtor.

15. At this point, Mr. Stone had no notice or knowledge that "Mr. Zooberg's privilege to practice before this Court was suspended April 1, 2015."

16. On April 29, 2015, Mr. Stone responded with an electronic mail stating that he would "prepare the order and remove the hearing", and Ms. Wineman responded back the same day with "[t]hank you for your assistance."  A copy of the April 29, 2015 electronic mail is attached hereto as **Exhibit 3**.

17. Mr. Stone timely and properly removed the hearing on the Objection set for May 8, 2015.

18. On May 19, 2015, Mr. Stone transmitted to Mr. Zooberg via facsimile a proposed consent order ("Order") with respect to the Objection. A copy of the May 19, 2015 facsimile is attached hereto as **Exhibit 4**.

19. At this point, Mr. Stone had no notice or knowledge that "Zooberg's privilege to practice before this Court was suspended April 1, 2015."

20. By correspondence dated May 20, 2015, Ms. Wineman transmitted the Order to Mr. Stone. A copy of the May 20, 2015 correspondence is attached hereto as **Exhibit 5**.

21. At this point, Mr. Stone had no notice or knowledge that "Mr. Zooberg's privilege to practice before this Court was suspended April 1, 2015."

22. Although not recognized nor appreciated by Mr. Stone at the time, there are three (3) salient observations and facts regarding the May 20, 2015 correspondence and attached Order:

    i. The signature on page 2 of the Order is illegible and unreadable.

    ii. Mr. Zooberg's name is crossed out on page 2 of the Order, and the name "Philip Boardman" is written in its place.

    iii. Nowhere in the April 27, 2015 electronic mail, any correspondence, or in the Order is there a reference or mention to the fact that "Mr. Zooberg's privilege to practice before this Court was suspended April 1, 2015" or otherwise that Mr. Zooberg was not authorized to represent the Debtor or endorse orders on behalf of the Debtor.

23. The Order was then transmitted to R. Clinton Stackhouse, Chapter 13 Trustee ("Chapter 13 Trustee"), who then endorsed the Order and returned it to Mr. Stone. A copy of the fully endorsed Order is attached hereto as **Exhibit 6**.

24. On May 27, 2015, Mr. Stone electronically submitted the Order for entry. A copy of the electronic submission along with the fully endorsed Order is attached hereto as **Exhibit 7**.

25. At this point, Mr. Stone had no notice or knowledge that "Mr. Zooberg's privilege to practice before this Court was suspended April 1, 2015."

26. On May 29, 2015, Mr. Stone was contacted by a clerk of the Bankruptcy Court and was instructed to file a motion for entry of an order.

27. On June 2, 2015, Mr. Stone filed a Notice and Motion for Entry of an Order along with a revised order ("Revised Order") that replaced Mr. Zooberg's name with Boardman's. *See* Bankruptcy Case Docket Entry #25.

28. At a hearing on June 6, 2015, Judge Frank J. Santoro agreed to enter the Revised Order and also advised that the Show Cause would be entered.

29. On June 9, 2015, an Order was entered transferring this Bankruptcy Case from Judge Stephen C. St. John to Judge Frank J. Santoro. *See* Bankruptcy Case Docket Entry #29.

30. Subsequently, on June 9, 2015, the Revised Order that was signed by Judge Stephen C. St. John was entered in the Bankruptcy Case. *See* Bankruptcy Case Docket Entry #30.

31. On June 9, 2015, the Show Cause signed by Judge Stephen C. St. John on behalf of Judge Frank J. Santoro was entered.

32. The gravamen of the Show Cause is articulated in the following two assertions by the Bankruptcy Court in its Show Cause as to Mr. Stone's alleged transgressions:

- "The above circumstances indicate, at a minimum, Mr. Stone's misunderstanding of the Court's rules regarding securing permission to affix another's endorsement to an order prior to submitting that order to the Court."

- "As a result, the Court finds that Mr. Stone should appear and show cause why he should not be held in contempt for his failure to comply with the Court's rules and policies…."

33. As set forth below, the benign facts and circumstances of this matter, in conjunction with the standard of law that the Bankruptcy Court must apply, do not add up to or justify this Show Cause or any holding that Mr. Stone be held in contempt, sanctioned, or suspended.

**Legal Standard Applied to A Show Cause**

34. Under Federal Rule of Bankruptcy Procedure 9011(c)(1)(B) and pursuant to 11 U.S.C. § 105(a), the Bankruptcy Court has the inherent authority to sanction persons appearing before the court. *Walton v. LaBarge (In re Clark),* 223 F.3d 859, 864 (8th Cir.2000); *In re Brown,* 152 B.R. 563, 567 (Bankr. E.D. Ark. 1993) (*citing Harlan v. Lewis,* 982 F.2d 1255 (8th Cir.1993) and *Citizens Bank & Trust Co. v. Case (In re Case),* 937 F.2d 1014, 1023 (5th Cir.1991)). "Courts have used those provisions of section 105 ... to regulate the practice of lawyers."; *In re Brooks Hamilton,* 400 B.R. at 248.

35. "Bankruptcy Courts also have authority under § 105(a) 'to regulate those who appear before it, and what they say and do during that representation.'" *In re New River Dry Dock, Inc.*, Bankr. S.D. Fla. (2011), citing, *In re Brooks-Hamilton,* 400 B.R. 238, 248 (9th Cir. B.A.P. 2009) *(quoting* 2 Collier on Bankruptcy, ¶105.04[7]).

36. However, "[b]efore imposing sanctions under its inherent sanctioning authority, a court must make an **explicit finding of bad faith or willful misconduct**." *In re Dyer*, 322 F.3d

6

1178, 1196 (9th Cir. 2003); *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999) (a court must make "a specific finding of bad faith" before it can impose sanctions under § 105(a)) (emphasis added); see *Crowe v. Smith,* 261 F.3d 558; *Bynum v. Am. Airlines, Inc.,* 166 Fed.Appx. 730, 735 (5th Cir.2006) (citing *Chambers,* 501 U.S. at 44-46, 111 S.Ct. 2123; *Matter of Volpert,* 110 F.3d 494, 500 (7th Cir. 1997)).

37. "With regard to the inherent sanction authority, bad faith or willful misconduct consists of something more egregious than mere negligence or recklessness." *Id. (citing Fink v. Gomez,* 239 F.3d 989, 993-94 (9th Cir. 2001)).

38. "Bad faith, for the purposes of section 105 is characterized as an attempt to abuse the judicial process." *In re Gorshtein,* 285 B.R. 118, 124 (Bankr. S.D. N.Y. 2002) (citing *In re Spectee Group, Inc.,* 185 B.R. 146, 155 (Bankr. S.D. N.Y. 1995)).

39. Indeed, the Supreme Court of the United States warned that the court's inherent powers should be invoked if it finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled." *Chambers,* 501 U.S. at 46, 111 S.Ct. 2123.

40. By way of example, bad faith would include "an attorney slandering or maligning the dignity and reputation of the court." *Evergreen Security,* 570 F.3d at 1275-77; *In re 60 East 80th Street Equities, Inc.,* 218 F.3d 109, 116-17 (2d Cir. 2000).

41. A number of courts apply a clear and convincing evidence standard when the sanction is attorney suspension, as in this matter. *Shepherd v. Am. Broadcasting Companies*, *Inc.*, 62 F.3d 1469 (D.C. Cir. 1995); *In re Parsley*, 384 B.R. 138,179 (Bankr. S.D. Tex. 2008).

42. In sum, the threshold for imposing sanctions using the court's inherent powers is extremely high. *In re Parsley*, 384 B.R. at 179.

43. As set forth below, the alleged transgressions of Mr. Stone, even if true, do not rise to the level of justifying a sanction against Mr. Stone and the clear and convincing standard cannot be met under any interpretation or application of the current facts.

### **The Alleged Conduct is Not A Basis for Sanctions as a Matter of Law**

44. The operative facts are as follows:

- Mr. Zooberg, in a firm with Mr. Boardman, filed and signed the Petition.

- Mr. Zooberg, in a firm with Mr. Boardman, filed and signed the Plan.

- The March 18, 2015 order which promulgated Mr. Zooberg's suspension was not entered nor published in the Bankruptcy Case, nor was it transmitted to Mr. Stone.

- No notice was given by the Court, Mr. Zooberg, or Mr. Boardman to Mr. Stone that Mr. Zooberg had been suspended.

- None of the correspondence from Ms. Wineman made any mention of Mr. Zooberg's suspension or inability to sign an order.

- The Docket Report never removed Mr. Zooberg as representing the Debtor.

- Mr. Zooberg and Mr. Boardman practice law in the same firm, and one signing on behalf of another is not an unusual or improper act.

- While the Order returned to Mr. Stone had Mr. Zooberg's name crossed out and replaced with the name of Mr. Boardman, the signature on page 2 of the Order is illegible and unreadable.

45. The Court cites the case of *In re Smith* in support for the Show Cause; however, the facts in this case are distinguishable because there has been no allegation that Mr. Stone falsified any party's signature. Moreover, given the fact that Mr. Stone had no knowledge of Mr. Zooberg's

8

inability to endorse the order, then Mr. Stone complied with the Rules particularly as it relates to the "certification that the proposed order … has been endorsed by all necessary parties…."

46. At most, Mr. Stone can be accused of failing to change the name on the Order to reflect the fact that Mr. Boardman had ostensibly signed the Order instead of Mr. Zooberg.

47. Nevertheless, a reasonable fact-finder should excuse Mr. Stone from failing to identify the different name on the Order given the illegible signature on page 2 and the fact that Mr. Zooberg and Mr. Boardman practice together and there was no mention to Mr. Stone at any relevant time and in any manner whatsoever of Mr. Zooberg being suspended.

48. To the extent that a reasonable fact-finder would not excuse Mr. Stone from such an oversight, the actions by Mr. Stone simply do not rise to the level of bad faith necessary to sanction him under the Bankruptcy Court's inherent powers.

## **Conclusion**

49. As someone who has never been sanctioned by this or any other Court, Mr. Stone takes the Show Cause and the allegations contained therein with great seriousness and gravity. Notwithstanding the same, it is unfair to characterize the actions by Mr. Stone as somehow a threat to the "integrity of the bankruptcy system." There was no misunderstanding by Mr. Stone as to the Court's rules nor was there a failure to comply with the Court's rules and policies.

50. There are three (3) operative conclusions that should be reached: (i) at all relevant times, Mr. Stone was not aware of Mr. Zooberg's suspension; (ii) Mr. Stone obtained the endorsement of "all necessary parties" and continues to possess those endorsements; and (iii) at worst, the issue with the Order was a simple mistake that a reasonable person would find understandable and harmless given the circumstances of the situation, especially as it relates to a

failure by anyone - Mr. Zooberg or the Court - to provide any notice to Mr. Stone as to Mr. Zooberg's suspension.

51. In sum, there is nothing vexatious, wanton, or oppressive about Mr. Stone's conduct or actions. Mr. Stone did not act in bad faith, and Mr. Stone cannot be sanctioned under the Court's inherent powers because the burden of proof cannot be satisfied.

**WHEREFORE**, Jonathan L. Stone requests that the Bankruptcy Court dismiss or otherwise withdraw the Show Cause and award such other relief as deemed appropriate.

**July 2, 2015**                                        **JONATHAN L. STONE**

                                        By:   */s/ Jeffrey L. Marks*
                                                Of Counsel

Jeffrey L. Marks, Esquire (VSB No. 40202)
Kaufman & Canoles
2101 Parks Avenue, Suite 700
Virginia Beach, VA  23451
(757) 491-4000 – Telephone (888) 360-9092 – Facsimile
jlmarks@kaufcan.com
*Counsel for Jonathan L. Stone*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Response to Order to Show Cause was served by electronic mail and/or first-class U.S. Mail this 2nd day of July, 2015, to:

    Philip R. Boardman, Esquire      R. Clinton Stackhouse, Jr.
    Law Office of Philip R. Boardman, PC.      Chapter 12/13 Trustee
    2017 Cunningham Drive, Suite 210      7021 Harbour View Boulevard, Suite 101
    Hampton, VA 23666      Suffolk, VA 23435

    Peter F. Zooberg, Esquire      Kenneth N. Whitehurst, III, Esquire
    Law Office of Philip R. Boardman, PC.      Office of The United States Trustee
    2017 Cunningham Drive, Suite 210      200 Granby Street, Suite 625
    Hampton, VA 23666      Norfolk, VA 23510

and by e-mail to all creditors and parties-in-interest who are included in the Bankruptcy Court's ECF e-mail notification system.          */s/      Jeffrey L. Marks*